## CURTAIN SUPPLY CO. v. KEELER.

(Circuit Court, S. D. New York. July 22, 1904.)

1. PATENTS—INFRINGEMENT—SHADE HOLDERS.

The Forsyth patent, No. 559,446, for a holding mechanism for spring-actuated shades, is not for a pioneer invention, and is entitled to only a narrow construction limiting it to the particular means shown. Claims 3 and 4 *held* not infringed.

In Equity. Suit for infringement of letters patent No. 559,446 for a shade-holding device granted May 5, 1896, to Henry H. Forsyth and Henry H. Forsyth, Jr. On final hearing.

C. C. Linthicum, for complainant.
Frederick S. Duncan, for defendant.

PLATT, District Judge. This is a patent suit, alleging infringement, asking injunction and accounting, and has been heard on final pleadings and proofs. The complainant owns letters patent No. 559,446, granted May 5, 1896, to the Forsyths, for an improvement

in shade-holding devices. The defendant says that when the claims of the patent in issue are properly construed he does not infringe. Those claims are:

"(3) A holding mechanism for spring-actuated shades, comprising in combination spring-actuated rods slidably mounted in the lower margin of the shade, and having heads whose outer faces extend at right angles to the lower margin of the shade, friction tips carried by the heads and normally projecting beyond the plane of the edges thereof, and said heads having bearing points above and below the tips, and on which the fixture may rock when force is applied to the shade near one side thereof, substantially as described.

"(4) A holding device for spring-actuated shades, comprising in combination sliding rods mounted in the lower margin of the shade, heads carried by said rods, a plurality of friction tips mounted in said heads and providing separated bearings, and said heads being extended above and below the tips and adapted to contact with the window frame when the lower margin of the shade is moved into an abnormal position, substantially as described."

The primary duty is to construe the claims, and in doing so we must endeavor, by a study of the specifications and of the prior art, to learn what the gist of the invention is, if there be an invention. It relates to spring-actuated curtains, which had been in common use for many years on railroad and street cars. At the lower end of these had been attached a tube, having in its ends loosely mounted heads which fitted into grooves in the window casing. These heads were carried on rods within the tube, which met near the middle of the tube, and were connected through a slot with pinch-handles below. Springs within the tube pressed the heads outward, and kept them normally in contact with the bottom of the grooves, and the frictional holding power of the heads was enough to maintain the curtain at any desired height, in spite of the constantly acting upward pull of the curtain spring. By pressing the pinch handles together the heads could be withdrawn from frictional contact with the bottom of the grooves, and the fixture could be adjusted, and upon releasing the pinch handles the frictional contact again appeared, and the fixture remained wherever placed. Frequently, however, careless people would neglect the pinch handles, and try to shove the curtain up by hand, usually taking it by one end. In such case the upward pressure of the hand might overcome the frictional resisting power, and one end of the curtain would be shoved up out of level, and not infrequently the head would be brought out of the groove entirely. It was at an avoidance of these difficulties that the patentee aimed. Everything about the device is old until we come to the "head" (sometimes called "foot"). It is the use of certain heads in certain ways which is said to bring about the result which the inventor desired. In each claim they are to be used "substantially as described," and we are thus led directly to the specifications.

At the outset we will find that the patentee had one object in mind, and one only, and that was to make a "self-righting" curtain fixture; that is, one capable of automatically returning to a horizontal position after careless handling had left it tilted or canted. For this purpose he devised a peculiar form of head. These heads are fairly long. The face of the head (also called a "tip-holder") is provided with one or more friction tips, or bearing surfaces, preferably of leather or rubber (although a harder substance might be

used), carried by said head, and projecting beyond the face of the head. The head is longer than the friction tip, and extends at each end beyond the tip. The extended ends of the head are preferably provided with antifriction rollers, in order to increase the difference between the holding power of the tips and of the metal ends of the head. Figures 7, 4, and 8 show three suggested forms, No. 7 evidently being his most highly-approved device, and No. 8 of the least consequence. All through his specifications he is impressed with the idea that he has solved the problem of "self-righting" by the use of two sets of bearing surfaces having wide differences of frictional holding power; and the wider the better, so long as one takes into account the amount of upward strain applied by the curtain spring. The higher the holding power in the normal position, the less upward strain by the curtain spring is necessary; and, the less frictional resistance exercised by the outer ends when tilting has occurred, the more quickly and easily the fixture returns to its normal position. The ideal condition would be one where the lightest spring pressure of the friction tips against the grooves would overcome the upward strain, and the practical absence of frictional resistance at the ends would enable the fixture to at once rock back into place after canting or tilting.

Page 3 of the patent, lines 80 to 96, contains the following:

"It will be observed that the friction tips project beyond the plane of the outer edge of the head, so that when the bottom of the shade is in the normal position or horizontal the friction tips only contact with the bottoms of the groove. When, however, the bottom of the shade is tilted to an abnormal position, the metal ends contact with the bottom of the grooves and rock the tips away from frictional contact. As these metal ends offer but a slight frictional resistance to upward pull of the springs of the shade roller, they easily slide along the grooves. The instant the curtain is released, the shade at once rights itself, and the tips again come into frictional contact with the bottom of the grooves, thus holding the shade in the adjusted position."

This antithesis of holding power in the frictional tips and the antifrictional ends can be found even in figure 8, which is the simplest and least perfect form of the patented device.

It is not thought necessary to occupy space in outlining the prior art. It is enough to say that after careful examination I am of the opinion that self-righting action in curtain fixtures was not first exposed to the world by the Forsyths. It was inherent in all outwardly spring-pressed fixtures, and more or less valuable contributions had been made by other inventors. The patent in suit is not a pioneer, but discloses particular means for employing a well-known principle to obtain an old result. The entire theory of action of the fixture in the patent in suit is based upon the presence in the head of two sets of separate bearing surfaces of widely different frictional holding power. One set consists of friction tips of leather, rubber, or other material of a high coefficient of friction, located at or near the center of the head, and projecting beyond the face of the head, and forming the normal contact and holding surface when the fixture is horizontal. The other set consists of the extended ends of the head, and must be made of metal or other material of a low coefficient of friction, and preferably with antifrictional rollers. In the horizontal

position the ends are out of contact with the window frame, and are rocked into momentary contact only when the fixture is tilted. At such times the friction is so slight that the ends slide into their normal position under the pull of the curtain spring above. The claims in suit are in terms limited to this construction.

Defendant's fixture differs radically from the patented device, both in construction and mode of operation. It does not have two sets of bearing surfaces of widely different frictional holding power. There are no friction tips of a material having a high coefficient of friction, and no extended ends with a low coefficient of friction. It has no centrally located friction tips mounted in the head and projecting beyond its face. Tilting defendant's fixture does not cause a rocking of the head off of friction tips onto antifriction ends, but, on the contrary, causes one end of the head to press even harder against the window frame, tending to cause the curtain fixture to retain its abnormal position.

I agree absolutely with the proposition that, if defendant is using the complainant's invention as defined in the patent in suit, it is not important how much of the prior art he may employ; but I cannot subscribe to the major premise of the syllogism. The complainant admits that defendant's fixtures do not work "quite as well" as the patented device, and by so saying he seems to me to give away his case. What he sought was a device which would work better than those at that time in evidence, and congratulated himself upon having found it. Now he says to the defendant, "You are doing the same thing which I am doing, but you do not do it anywhere near as well as I do, and therefore you ought to stop work, and pay me for your infringement."

I do not think that the patent in suit is invalid, but I am very clearly of the opinion that the spirit and scope of the invention is too narrow to include the defendant's device. It does not comport with one's general ideas of justice that complainant, with all its flocks and herds, should covet the ewe lamb about which the combat rages. Its abundance, of course, ought not to count against it, but it would seem that it ought to have tempered its appetite when no more serious cause for complaint existed than can be found in this cause.

Let the bill be dismissed with costs.